# UNITED STATES DISTRICT COURT
for the
Judicial District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A red Samsung Galaxy S5 cellular phone. | )<br>)<br>) Case No. 15mr590<br>)<br>)<br>) |

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

15 SEP 18 PM 1:40

CLERK-ALBUQUERQUE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A:

located in the __Judicial__ District of __New Mexico__, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- [x] evidence of a crime;
- [ ] contraband, fruits of crime, or other items illegally possessed;
- [x] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. 841 (a)(1) | Distribution of, and possession with intent to distribute controlled substances. |

The application is based on these facts:
Please see attached Affidavit.
This Search Warrant Application and attached Affidavit have been reviewed and approved by AUSA Edward Han.

- [x] Continued on the attached sheet.
- [ ] Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Castleberry, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09-18-2015

*Judge's signature*

City and state: Albuquerque, New Mexico        U.S. Magistrate Judge Steven C. Yarbrough
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE RED SAMSUNG GALAXY S5 ACTIVE CELLULAR PHONE CURRENTLY LOCATED AT THE DEA ALBUQUERQUE DISTRICT OFFICE | Case No. _____ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, John Castleberry, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since January 2011. During this time I accumulated the following training and experience:

   a) I graduated from the DEA Academy (Quantico, Virginia). I received approximately 19 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic

monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

b) As a DEA agent I have participated in investigations targeting individuals and organizations trafficking cocaine, cocaine base ("crack"), marijuana, methamphetamine, heroin, and other controlled substances, as defined in Title 21 United States Code, Section 801.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is one cellular telephone further described as: a red, Samsung Galaxy S5 Active, hereinafter the Device. The Device is currently located at the DEA Albuquerque District Office.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On September 4, 2015 at approximately 1:30 p.m., Deputy Leonard Armijo with the Bernalillo County Sheriff's Office (BCSO) was patrolling I-40 eastbound, when he observed a black Dodge Journey bearing Texas plate FLK6583 traveling eastbound at a very slow rate. Deputy Armijo conducted a traffic stop on I-40 eastbound, at mile marker 143 for impeding the flow of traffic.

7. Upon approaching the vehicle, Deputy Armijo contacted the driver, later

identified through his driver's license as James "Jimmy" MILLER. According to Deputy Armijo, MILLER was acting very nervous while speaking with Deputy Armijo. Deputy Armijo asked MILLER if he was the owner of the vehicle, to which MILLER replied that it was his friend's rental vehicle. Deputy Armijo then asked MILLER what his friend's name was that rented the vehicle. MILLER looked down at the rental agreement for the vehicle and said "Rodriguez". MILLER then gave Deputy Armijo his driver's license and paperwork for the vehicle. Deputy Armijo could see the last name "Rodriguez" on the paperwork after MILLER looked at it and handed it to him. Deputy Armijo asked MILLER for his friend's first name, to which MILLER did not know it. The only name on the rental agreement was "Rodriguez". Neither MILLER nor the passenger, Carla Lancaster, has the name "Rodriguez".

8. Because of MILLER's nervousness and lack of knowledge of the vehicle he was driving, Deputy Armijo asked MILLER to step out of the vehicle for their safety. Deputy Armijo then conducted a Terry Pat on MILLER when he felt a large bulge in his right rear pocket. Deputy Armijo stated that the object was large and crunchy when he felt it. Deputy Armijo knew, based on his training and experience, that the substance was methamphetamine. Deputy Armijo asked MILLER what the item was and MILLER immediately pulled away from Deputy Armijo. Deputy Armijo placed MILLER in handcuffs. MILLER then told Deputy Armijo the item in his pocket was methamphetamine. Deputy Armijo retrieved a clear plastic bag containing crystal methamphetamine. The substance was field tested and received a presumptive positive result for the presence of methamphetamine. The methamphetamine in MILLER's pocket weighed 14 grams.

9. Deputy Armijo read MILLER his *Miranda Rights*, which MILLER said he understood; agreed to answer his questions. MILLER told Deputy Armijo he had additional

methamphetamine and marijuana in the vehicle. MILLER continued by stating that he was from Missouri and spent the past several weeks in Phoenix, Arizona. MILLER stated that his friends rented the car for him approximately one month ago, and did not provide a reason why they rented it for him.

10. Detective Jacob Nance (BCSO) spoke with the passenger, Carla Lancaster. Lancaster stated that MILLER works for the Mexican cartel in Phoenix and keeps "a lot of secrets" about what he does for them.

11. Det. Nance then obtained a state search warrant for the 2015 Dodge Journey driven by MILLER from District Court Judge Brett Lovelace. Upon executing the search warrant, Det. Nance located a bundle wrapped in duct tape under the dashboard on the passenger side. Det. Nance felt the crunchy bundle as he retrieved it; based on his training and experience, knew the substance to be methamphetamine. The bundle was later opened, weighed and field tested for methamphetamine. The substance received a presumptive positive result for the presence of methamphetamine. The bundle weighed approximately 6.5 ounces (184 grams) with packaging. Det. Nance also located a small digital scale and plastic baggies in a black backpack in the back seat, inside the vehicle. Det. Nance also located approximately $9,900.00 (U.S. currency) in an envelope with "Save for Roy" written on the top, in the center console. MILLER also had approximately $4,000.00 (U.S. currency) in his wallet. Det. Nance showed the bundle of methamphetamine to MILLER. MILLER stated that he didn't know what the bundle was nor has he seen it before. Det. Nance then spoke with Lancaster. Lancaster stated that she saw MILLER holding two of the bundles before they left Phoenix, Arizona. Lancaster also stated that if the two bundles were not together, then MILLER must have gotten rid of the other one. MILLER was arrested and booked into the Bernalillo County Metropolitan Detention Center for

trafficking methamphetamine. On September 5, 2015 your affiant received telephonic approval from Chief Magistrate Judge Karen B. Molzen for a criminal complaint on MILLER for the violation of Title 21 USC Section 841(a)(1) and (b)(1)(B), possession with intent to distribute more than fifty grams of a mixture and/or substance containing methamphetamine, a controlled substance.

12. Investigators also located the Device in the subject vehicle. Your affiant took custody and control of the cellular phone, processed them as evidence and turned them over to the nondrug evidence custodian for safekeeping.

13. Based on my training and experience, and conversations with Agents, and Officers, I know the following regarding those involved in, trafficking of controlled substances, including heroin, maintaining a place for the purpose of distributing narcotics, conspiracy, and use of a telephone to facilitate drug crimes:

(a) Drug traffickers often use telephones, cellular telephones, pagers, and other communication devices, i.e. "BlackBerrys" and other similar devices, to facilitate their sales, track and monitor drug shipments, communicate with subordinates and other associates, arrange monetary transfers, and avoid police detection. Drug dealing is an ongoing practice, so these communications may take place at any time.

(b) Drug dealers also use answering machines, voice mail, and text messaging to receive, transmits, and store messages to and from customers, suppliers, subordinates, and other associates, involved in the distribution of controlled substances.

(c) Drug dealers often use cameras to capture a moment in the history of their drug transactions. For example, they may photograph themselves or others next to large amounts of

drugs and or money, to show others the quantity of drugs which they can deliver. These photographs may also show their business associates with large amounts of drugs and money. These photographs are often stored in the electronic memory, SIM cards, or other storage devices of the cellular telephones.

14. The Device is currently in storage at the DEA Albuquerque District Office. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This

removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16.    Based on my training, experience, and research, I know that this Device has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, Tablet, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

11

19.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

20.  *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
John Castleberry
Special Agent
Drug Enforcement Administration

12

*Re- Search of red Samsung Galaxy S5 cellular phone.*

Subscribed and sworn to before me
on September 18, 2015:

_____
Steven C. Yarbrough
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

4.  The property to be searched is one cellular telephone further described as: a red, Samsung Galaxy S5 Active. The phone is currently located at the DEA Albuquerque District Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841, 843, and 846 and involve James Ray MILLER, or any other individual aiding, abetting, or assisting them since June 1, 2015, including:

   a. lists of customers and related identifying information (including names, addresses, phone numbers, emails, social networks, or any other identifying information);

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, emails, social networks, or any other identifying information);

   d. any information recording MILLER's schedule or travel from June 1, 2015, to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.



